UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Criminal No.: 1:11-cr-115 |
| v. | ) | |
| | ) | The Hon. Liam O'Grady |
| JORGE AVILA TORREZ, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO EXCLUDE COOPERATING WITNESS TESTIMONY AND REQUEST FOR A RELIABILITY HEARING

COMES NOW the defendant, Jorge Avila Torrez ("Mr. Torrez"), by counsel, and moves this Court, to order that the government disclose any and all contact between government agents or prosecutors and potential informants incarcerated with Mr. Torrez. In support, Mr. Torrez relies upon Federal Rules of Criminal Procedure 12(b)(3) and (4), and the Fifth, Sixth, and Eighth Amendments.

### Argument

**I. COURTS HAVE DEEMED COMPENSATED WITNESSES UNRELIABLE AND SUBJECT TO ADDITIONAL JUDICIAL SCRUTINY.**

The Fourth Circuit has expressed its deep concern over the use of compensated informant testimony and its reluctance to admit such testimony absent stringent judicial controls. *United States v. Levenite*, 277 F.3d 454, 459-62 (4th Cir. 2002). Compensated testimony "create[s] fertile fields from which truth-bending or even perjury could grow, threatening the core of a trial's

legitimacy." *Id*. at 462. Such testimony "may be approved only rarely and under the highest scrutiny." *Id.* [1]

The Fourth Circuit has prescribed additional procedural guarantees that the government must adhere to where compensated informant witnesses are contemplated. Before such testimony will be permitted: (1) the compensation arrangement must be disclosed to the defendant, (2) the defendant must have the opportunity to cross-examine the witness, and (3) the jury must be instructed to engage in heightened scrutiny of the witness. Finally, where the compensation is:

> contingent on the content or nature of the testimony given, the court must ascertain (1) that the government has independent means, such as corroborating evidence, by which to measure the truthfulness of the witness's testimony and (2) that the contingency is expressly linked to the witness testifying truthfully. Moreover, when a witness is testifying under such a contingent payment arrangement, the government has a duty to inform the court and opposing counsel when the witness' testimony is inconsistent with the government's expectation.

*Levenite*, 277 F.3d at 462-63.

Similarly the Ninth Circuit has called for increased judicial scrutiny of deals between informants and the government, holding that "where the prosecution fails to disclose evidence such as the existence of a leniency deal or promise that would be valuable in impeaching a witness whose testimony is central to the prosecution's case, it violates the due process rights of the accused and undermines confidence in the outcome of the trial," *Horton v. Mayle*, 408 F.3d 570, 581 (9th Cir. 2005), and calling such lack of disclosure "unscrupulous." *Silva v. Brown*, 416 F.3d 980, 991 (9th Cir. 2005).

---

[1] While *Levenite* concerned a witness who was testifying in exchange for money, the same concerns arise whether the compensation consists of money or reduced criminal sanctions. Indeed, the promise of a reduced sentence or the elimination of the capital sentencing option may be far more valuable to a defendant than cash. *See Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (same analysis applies to informant compensation whether for money or lenience).

In this case, at least one cooperator expects to be compensated specifically for testimony adverse to Mr. Torrez. Such contingent testimony precisely of this sort is what so troubled the Fourth Circuit in *Levenite*. The Court therefore has an obligation to ascertain whether the government can corroborate the cooperator's truthfulness, the nature of the contingency arrangement, and how the government intends to assure that the cooperator testifies truthfully. Because of the difficulty ascertaining these matters in the heat of trial in the presence of the jury, a pre-trial reliability hearing is warranted.

## II. COMPENSATED WITNESSES ARE INHERENTLY UNRELIABLE.

A growing literature documents the inherent unreliability of compensated witnesses, cooperating co-conspirators, "jailhouse snitches," and other types of informants. Numerous stories of wrongful convictions based on perjurious informant testimony have emerged, and they have prompted official review of the practice of permitting compensated informant testimony. The following list contains just a few of the efforts to document and control informant unreliability:

- The founders of the Innocence Project discovered that twenty-one percent of the innocent defendants on death row were placed there by false informant testimony.[2]

- The Illinois Governor's Commission on Capital Punishment unanimously concluded that "[t]estimony from in-custody witnesses has often been shown to have been false, and several of the thirteen cases of men released from death row involved, at least in part, testimony from an in-custody informant."[3] The Commission recommended the holding of reliability hearings to mitigate the chances of perjury.

---

[2] BARRY SCHECK, PETER NEUFELD & JIM DWYER, ACTUAL INNOCENCE 126-57 (Doubleday 2000).

[3] Illinois Governor's Commission on Capital Punishment, Chapter 8 (April 2002).

- Bedau and Radelet in their comprehensive historical study discovered that one-third of the 350 erroneous convictions they studies were due to "perjury by prosecution witnesses," twice as many as the next leading source – erroneous eyewitness identification – and stemming in large part from the prevalence of co-conspirator testimony.[4]

Courts likewise have recognized the inherent unreliability of compensated informants, going so far as to take judicial notice of their tendency to lie. "The use of informants to investigate and prosecute persons engaged in clandestine criminal activity is fraught with peril. This hazard is a matter 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned' and thus of which we can take judicial notice." *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). "Our judicial history is speckled with cases where informants falsely pointed the finger of guilt at suspects and defendants, creating the risk of sending innocent persons to prison." *Id.* Another court has noted that "[n]ever has it been more true that a criminal charged with a serious crime understands that a fast and easy way out of trouble with the law is . . . to cut a deal at someone else's expense and to purchase leniency from the government by offering testimony in return for immunity, or in return for reduced incarceration." *Northern Mariana Islands v. Bowie*, 243 F.3d 1109, 1123 (9th Cir. 2001). Indeed, long before snitching became a pervasive aspect of the criminal justice system, the Supreme Court recognized that "[t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility." *On Lee v. United States*, 343 U.S. 747, 755 (1952).

---

[4] Hugo Bedau & Michael Radelet, *Miscarriages of Justice in Potentially Capital Cases*, 40 *Stan. L. Rev.* 21, 173 (1987).

Where the unreliability of a particular type of witness is so well-established, it is appropriate for the court to take protective steps to guarantee the integrity of the process. *Cf. Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 595 (1993) (court to act as "gatekeeper" to ensure reliability of scientific evidence).

## III. THE GOVERNMENT HAS AN OBLIGATION TO ESTABLISH THE RELIABILITY OF ITS COOPERATING WITNESSES.

The government has special obligations when it comes to their cooperating informants. Courts have established that a "prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the truth-seeking mission of our criminal justice system [and courts] expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery." *Commonwealth of the Northern Mariana Islands v. Bowie*, 236 F.3d 1083, 1089 (9th Cir. 2001); *see also Levenite*, 277 F.3d at 459-62. This obligation stems from two sources: first, the government enlists and controls and rewards its informants and is therefore in a unique position to evaluate their reliability. The second is that the prosecutor, as the representative of the sovereign, has an ethical obligation to ensure that the defendant is given a fair trial. *See Bowie*, 236 F.3d at 1089 (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

## IV. A PRETRIAL RELIABILITY HEARING IS REQUIRED TO TEST THE INFORMANT'S RELIABILITY OUTSIDE THE PRESENCE OF THE JURY.

### A. The Court has the Authority and Obligation to Conduct a Reliability Hearing Under the Federal Rules of Evidence.

In this case, the interests of justice and a fair trial require a pretrial reliability hearing to permit the Court to ascertain the reliability and probative value of the cooperators' testimony. The Court has clear authority to hold such a hearing pursuant to Federal Rule of Evidence 104(c), which

5

provides: "Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require . . . ."

The rules of evidence likewise obligate the Court to screen out unfairly prejudicial, harmful, confusing or otherwise unhelpful evidence. Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Likewise, Federal Rule of Evidence 701, limits lay witness testimony to testimony that is "helpful" to the trier of fact.

At least two courts have ordered reliability hearings whenever incarcerated informants ("jailhouse snitches") are proposed witnesses. *See Dodd v. State*, 993 P.2d 778, 784 (Ok. Ct. of Crim. App. Jan. 6, 2000) (Strubhar, J., concurring) (approving lower court imposition of "reliability hearing" comparable to *Daubert* hearing); *D'Agostino v. State*, 107 Nev. 1001, 823 P.2d 283 (Nev. 1992) (holding that before "jailhouse incrimination" testimony is admissible the "trial judge [must] first determine[] that the details of the admissions supply a sufficient indicia of reliability"). The Illinois Governor's Commission on Capital Punishment has likewise recommended reliability hearings whenever incarcerated informants are offered as witnesses.[5] These recommendations apply here with equal force. Jailhouse snitches are incarcerated defendants who provide information to law enforcement in exchange for charging and sentencing benefits. The ability of such snitches to

---

[5] *See* Illinois Governor's Report at 30 & 122.

fabricate confessions and other evidence has become infamous.[6] Precisely the same concerns are present where, as here, the informant is in custody, subject to criminal penalties, and is offering unique, unverifiable information in exchange for lenience.

> B. **The Principles of *Daubert* Support of the Holding of a Reliability Hearing.**

The law's treatment of expert witnesses further supports the holding of a reliability hearing in this instance. In *Daubert v. Merrell Dow Pharmceuticals Inc.*, 509 U.S. 579 (1993), the Supreme Court determined the need for a special mechanism to evaluate the reliability of expert witnesses because experts pose thorny problems of cross-examination and persuasion. Experts, for example, rely on specialized information that is not directly available to the jury. *Daubert*, 509 U.S. at 592. The court held that the concerns underlying Rule 403 are preeminent because expert witnesses can have such a potent effect on juries:

> Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 [] exercises more control over experts than over lay witnesses.

*Daubert*, 509 U.S. at 595. Moreover, as Professor Harris has noted, expert witnesses are compensated, violating the usual presumption against the use of paid testimony.[7] The suitability of compensated expert testimony is thus determined in part by pre-trial judicial examinations of reliability.

---

[6] *See* Illinois Governor's Report at 122-123 (detailing the Los Angeles Grand Jury investigation of jailhouse snitch testimony).

[7] *See* George C. Harris, *Testimony for Sale: The Law and Ethics of Snitches and Experts,* 28 Pepp. L. Rev. 1, 1-5 (2000).

Informants pose many of the same special concerns that expert witnesses do. Unlike typical lay witnesses, they are compensated, they have personal interests in the outcome of the case, their testimony is difficult to test on cross-examination, and they are selected and controlled by the propounding party.[8] Like experts, moreover, informant testimony can be "powerful and quite misleading." At least one court has expressly extended the principles of *Daubert* to cover informants, imposing a "reliability hearing" requirement whenever the testimony of a so-called "jailhouse snitch" is involved. *Dodd v. State*, 993 P.2d 778, 784 (Ok. Ct. of Crim. App. Jan. 6, 2000) (Strubhar, J., concurring) (approving lower court imposition of "reliability hearing" comparable to *Daubert* hearing).

      **C.**      <u>**A Reliability Hearing is Warranted on the Facts of this Case.**</u>

The false testimony of jailhouse informants expecting some benefit in their own cases is an important cause of the execution or near execution of the innocent. Such testimony "helped convict or condemn four of the twelve Illinois Death Row inmates who were later exonerated." "The Inside Informant," *Chicago Tribune* (November 16, 1999) at 8. "In two other cases, prosecutors had jailhouse informant testimony ready but did not use it" against innocent men. *Id*. This means that of the undisputed twelve innocent men in Illinois who were nearly executed, fifty percent faced perjury by a jailhouse informant.

"The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." *Johnson v. Missippi*, 486 U.S. 578, 584 (1988) (quoting *Gardner v. Florida*, 430 U.S. 349, 363-64 (1977) (White, J., concurring)). It

---

[8] *See* Harris, *Testimony for Sale*, at 49-59.

is now well established that when a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). As this Court is acutely aware, the penalty of death is qualitatively and profoundly different from any other sentence. For this reason, our system of justice must go "to extraordinary measures to ensure that the prsioner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." *Eddings v. Oklahoma*, 455 U.S. 104, 118 (O'Connor, J. concurring). These "extraordinary measures" must be taken at both stages of any capital trial. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).

## Conclusion

WHEREFORE, Mr. Torrez requests that this Court exclude the testimony of the cooperators and for a pretrial reliability hearing to evaluate the reliability and probative value of the cooperator's testimony.

Respectfully submitted,
Jorge Avila Torrez
By Counsel

_____/s/_____
Geremy C. Kamens
Virginia Bar No. 41596
First Assistant Federal Public Defender
Attorney for Mr. Torrez
1650 King St., Suite 500
Alexandria, Virginia 22314
Tel. (703) 600-0800
Fax (703) 600-0880
Geremy_Kamens@fd.org

_____/s/_____
Christopher M. Davis
Admitted Pro Hac Vice
Attorney for Mr. Torrez
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
(202) 234-7300
cdavisdc@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of October, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mr. Michael E. Rich
Assistant United States Attorney
2100 Jamieson Ave.
Alexandria, Virginia, 22314
(703) 299-3700
mike.rich@usdoj.gov

        /s/
Geremy C. Kamens
Virginia Bar No. 41596
First Assistant Federal Public Defender
Attorney for Mr. Torrez
1650 King St., Suite 500
Alexandria, Virginia 22314
Tel. (703) 600-0800
Fax (703) 600-0880
Geremy_Kamens@fd.org